1   Norman D. Grissom, Esq. (SBN 257389)
    Ali Hosseini, Esq. (SBN 316470)
2   **Law Offices of Norman David Grissom**
    5060 North Harbor Drive, Suite 255
3   San Diego, California 92106
    Telephone: (619) 544-8940
4   Facsimile: (888) 672-4954
    Ndglaw2014@gmail.com
5
    Attorneys for Lynn Bautisa and
6   Vic Entertainment & Campaigns

**FILED**

**DEC 2 6 2018**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**          "BY FAX"

10

11  BRUCE DEWAYNE JOHNSON,         )   **Bankruptcy Case No: 1:18-bk-12321-MT**
                        Debtor.    )
12  _____)   **Chapter 7**
                                   )
13  LYNN BAUTISTA, an individual;  )   **Adversary Proceeding No:**
                                   )
14                      Plaintiff, )   **COMPLAINT FOR NON-**
    vs.                            )   **DISCHARGEABILITY OF DEBT FOR:**
15                                 )
    BRUCE JOHNSON, an individual;  )   **(1) FALSE PRETENSES;**
16  MAINSTREAM MEDIA PARTNERS, INC., a )   **(2) FALSE REPRESENTATION; and**
    California corporation;        )   **(3) FRAUD**
17                                 )
                        Defendants.)   [11 U.S.C. Section 523(a)(2)(A)]
18  _____)

19

20      Plaintiff LYNN BAUTISTA alleges as follows:

21                         *INTRODUCTION*

22      1.      LYNN BAUTISA ("Ms. Bautista") is, and at all times herein mentioned was, a self-

23      employed individual who resides in Los Angeles County, California.

24      2.      Defendant BRUCE DEWAYNE JOHNSON ("Mr. Johnson") is, and at all times

25      herein mentioned was, an individual who resides in Los Angeles County,

26      California.

27  ///

28  ///

3.     Defendant MAINSTREAM MEDIA PARTNERS INC. ("Mainstream Media Partners") is a California corporation, with its principal place of business in Los Angeles County, California.

### JURISDICTION AND VENUE

4.     Jurisdiction and venue are proper in the United States Bankruptcy Court, Central District of California because the conduct complained of and the operation of the businesses lie within the judicial districts of Los Angeles County and the State of California. Further, this is a complaint under 11 U.S.C. Section 523(a)(2) and (4), so venue and jurisdiction are conferred on this Court pursuant to 28 U.S.C. 1334, Bankruptcy Rule 7001, 28 U.S.C. Sections (2)(I) and Sections1408, 1409 (a), 1410 and 1412.

### FACTUAL STATEMENT

5.     Ms. Bautista and her affiliated entities are in the entertainment business. She primarily acts as a Promoter which entails securing artists for performances at venues worldwide.

6.     Defendants Mr. Johnson and his corporate entity Mainstream Media (collectively referred to as the "Defendants") are involved in the business of securing musical performances, specifically as a type of intermediary between musicians and parties seeking to secure performances, such as Ms. Bautista.

7.     The Parties entered into an agreement on or about April 24, 2017 ("Binder Agreement"), to attempt to secure a performance by Peter G. Hernandez, professionally known as Bruno Mars, at an international concert venue. A true and correct copy of the Binder Agreement is attached hereto as Exhibit "1."

8.     The Binder Agreement provided that Ms. Bautista pay the Defendants the sum of $180,000 ("Binder Fee"), who would then present the offer to Bruno Mars as a down payment to secure his performance. The agreement provided that if Bruno Mars declined to perform, Defendants were to return the Binder Fee to Ms. Bautista within three (3) business days.

Complaint for Non-Dischareeabiliv of Debt

9. Defendants expressly represented to Ms. Bautista that the Binder Fee would be kept in a secure, insured and appropriate financial account such as a dedicated Trust account. These type of secure accounts are standard in the industry when receiving and transferring such large sums of money to and from artists, agents and promoters.

10. Ms. Bautista relied on the Defendants' representations that the Binder Fee would <u>always</u> be placed in a secure and appropriate financial account when she decided to retain Defendants to act as the intermediary in the Bruno Mars deal.

11. The Binder Fee monies were transferred from the Defendants to the Agency who represented Bruno Mars and held by them after the transfer from Defendants.

12. Bruno Mars eventually declined to perform, requiring Defendants to return Ms. Bautista's funds within three (3) business days.

13. The Binder Fee funds were transferred back to the Defendants by Bruno Mars' Agency in a timely fashion. However, the Defendant did <u>not</u> place the funds in a secure and appropriate financial account. Instead, Defendants comingled the Binder Fee funds, with other monies in a general business checking account.

14. When Ms. Bautista demanded the return of the Binder Fee, Defendants stated that her funds had been seized via a subpoena, executed on Defendants' business checking account on or about August 3, 2017, pursuant to a legal order against Defendant Bruce Johnson from an separate and unrelated Family Court Judgement/Order, in the amount of $217,271.13, of which $189,448.45 was effectively deducted from Ms. Johnson's bank account.

15. Defendants, through their conduct, acted in a fiduciary capacity, entrusted with keeping Ms. Bautista's funds for the designated purpose of the Binder Agreement, and with returning the funds as required by the Binder Agreement.

16. Since these events transpired, Defendants have repeatedly requested more time to return/replace the seized Binder Fee monies. Eventually the parties entered into a Promissory Note on or about March 12, 2018, with Defendants agreeing to repay

the debt with a series of periodic payments. A true and correct copy of the Promissory Note is attached hereto as Exhibit "2."

17. Defendants subsequently defaulted on the Promissory Note, causing Ms. Bautista to bring suit in California Superior Court for the County of Los Angeles (Case No. EC 068460). Defendants were defaulted in that action prior to filing their Chapter Seven (7) bankruptcy petition with this Court.

18. Defendants failed to place Ms. Bautista's funds in a designated trust account for purposes of their attempt to secure Bruno Mars' performance, and Mr. Johnson breached his fiduciary duties to Ms. Bautista by depositing her funds into his own accounts to which his other creditors had access. This is especially true since he knew that this Family Court Judgment/Order already existed in the other case and all his accounts, both personal and business, were subject to seizure.

19. During the time Ms. Bautista worked with the Defendants, no one ever disclosed that the Binder Fee monies would be at risk or subject to seizure for Defendants personal debts. Ms. Bautista relied at all times on Mr. Johnson to uphold the fiduciary duty incumbent upon him in his position as the holder of the Binder Fee monies and his representations that the Binder Fee monies would be safe and secure.

20. Plaintiff is informed and believes and thereon alleges that Defendants fraudulently represented that the Binder Fee would be kept in a secure, insured and appropriate financial account such as a dedicated Trust account in a deliberate attempt to conceal and disguise his improper activities and to misappropriate the monies belonging to Ms. Bautista.

21. Ms. Bautista hereby objects to the discharge of any debts owed to her by Defendants by reason of debts incurred through false pretenses, false representation or actual fraud, pursuant to 11 U.S.C. § 523(a)(2)(A), and by reason of fraud pursuant to 11 U.S.C. § 523(a)(2).

///

### FIRST CLAIM FOR RELIEF

*(For Non-Dischargeability of Debt Owed to Plaintiff Under 11 U.S.C. 523(a)(2)(A))*

22.  Ms. Bautista re-alleges the allegations in paragraphs 1 through 21, and incorporates them by reference into this cause of action as though fully set forth herein.

23.  Defendants expressly represented to Ms. Bautista that the Binder Fee would always be kept in a secure, insured and appropriate financial account such as a dedicated Trust account.

24.  Ms. Bautista relied on the Defendants' representations that the Binder Fee would always be placed in a secure and appropriate financial account when she decided to retain Defendants to act as the intermediary in the Bruno Mars deal and transfer such large amounts of money through his company.

25.  The Binder Fee funds were transferred back to the Defendants by Bruno Mar's Agency in a timely fashion. Defendants comingled the Binder Fee funds, with other monies in a general business account checking account. The funds were subsequently seized, pursuant to an unrelated Family Court Judgement/Order, of which $189,448.45 was effectively deducted from Ms. Johnson's bank account.

26.  Defendants knew that this Family Court Judgment/Order already existed in the other case and all his accounts, both personal and business, were subject to seizure. Defendants acted with actual knowledge or reckless disregard for the truth that the Ms. Bautista's funds were secure.

27.  During the time Ms. Bautista worked with the Defendants, no one ever disclosed that the Binder Fee monies would be at risk or subject to seizure for Defendants personal debts. As a direct and proximate result of Defendant's theft, Plaintiff has been damaged in an amount to be proven at trial, in an estimated amount of $210,000. The amount of $180,000, as well as costs and attorney's fees, and said amounts are non-dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A).

///

///

### SECOND CLAIM FOR RELIEF

#### (For Non-Dischargeability Based Upon Fraud, 11 U.S.C. Section 523(a)(2))

28. Ms. Bautista incorporates by reference paragraphs 1 through 27 of this Complaint, inclusive, as though fully set forth herein.

29. Defendant Johnson has misappropriated for his personal use and/or debt satisfaction and possession, without Ms. Bautista's consent, funds belonging to Ms. Bautista in an amount totaling at least $180,000, (exclusive of fees and costs).

30. Defendants fraudulently presented themselves as experienced in this industry and that Ms. Bautista's funds would be secure.

31. As a direct and proximate result of Defendant's theft, Ms. Bautista has been damaged in an amount to be proven at trial, in an estimated amount of $220,000, and said amounts are non-dischargeable pursuant to 11 U.S.C. Section 523(a)(2).

**WHEREFORE**, Plaintiff prays for judgment of non-dischargeability against Defendant Martinez pursuant to 11 U.S.C. Section 523(a) as follows:

1  For is First Claim for Relief for non-dischargeability under 11 U.S.C. Section 523(a)(2)(A) in the amount of $180,000;

2. For its Second Claim for Relief for non-dischargeability based on 11 U.S.C. Section 523(a)(2) in the approximate amount of $220,000;

3. For costs of suit and attorneys fees as appropriate.

4. And for such other and further relief is just and proper.

Respectfully Submitted:

*Law Offices of Norman D. Grissom*

Dated: 12/26/2019

By: _____

Ali Hosseini, Esquire
Attorneys for Plaintiff Lynn Bautista

Complaint for Non-Dischargeabiliv of Debt

# EXHIBIT 1

## Talent Procurement Services
## Binder Agreement

**Important Notice:**

Mr. Peter G. Hernandez p/k/a Bruno Mars will be contacted directly by Bruce Johnson on behalf of Mainstream Media Partners and consequently we will communicate with the US Booking Agent William Morris Endeavor Agency (WME) and the Music Management of Artist (Gorilla Management). Mainstream Media Partners is your non-exclusive middle buyer for Mr. Peter G. Hernandez p/k/a Bruno Mars for this concert, in this specific territory for this specific one-off event. Mainstream Media Partners will act as liaison in the attempt to confirm Mr. Peter G. Hernandez p/k/a Bruno Mars pending the acceptance of your suggested offer and if Mr. Peter G. Hernandez p/k/a Bruno Mars is interested in your event, A Mainstream Media Partners representative will assist on the production requirements for Mr. Peter G. Hernandez p/k/a Bruno Mars when needed.

For the purpose of this agreement Mr. Peter G. Hernandez p/k/a Bruno Mars, on one hand will be referred to as ("Artist"). V Entertainment F/S/O Mr. Peter G. Hernandez p/k/a Bruno Mars, on the other hand, shall be referred to as ("Purchaser"). For the purpose of this agreement, Mainstream Media Partners may be referred to as ("Middle Buyer").

Offer Amt:    $1,800,000.00  (One Million Eight Hundred Thousand Dollars - USD)
Terms:        Delivered Guaranteed Talent Fee (Purchaser to provide Tech and Hospitality riders)

Schedule:
| | | |
|---|---|---|
| **Initial:** | Immediately | $50,000.00  (Binder to Liaise with WME & Mgmt) |
| **First:** | May 25, 2017 | $50,000.00  (Start Sponsorship solicitation) |
| **Second:** | June 26, 2017 | $80,000.00 |
| **Third:** | After August 25, 2017 | $720,000.00 (Request to Begin Promo & Sales) |
| **Final Payment:** | Before October 23, 2017 | $900,000.00 (45 days prior to event) |

Date:            After November 15, 2017
Venue:           Mall of Asia Arena Manila, Philippines
Seating Cap:     (tbd)
Projected Gross: (scaling tbd)
*Current Average Ticket Gross '17 – $47.25-$133.25 (24K Magic World Tour)

1) Pursuant to Artists' booking agency guidelines, Purchaser must pay minimum binder amount before Artist offer will be processed. The above event dates have not been guaranteed by the Artist and won't be secured by Purchaser simply by signing this binder agreement and paying the binder fee. A Fifty percent deposit (50%) of the talent fee is required to hold any date pending Artist approval. The aforementioned proposed date (November 2017) is an open date for the Artist after November 15, 2017.

2) The mutually agreed upon event dates will only be secured upon Artist confirmation of the offer, issuance of a separate booking contract with terms and conditions, execution of the booking contract, technical and hospitality riders, travel party terms and Purchaser's payment of the Artist deposit outlined in the booking contract.

3) By signing this binder the Purchaser agrees that the Middle Buyer will act as their "Exclusive" Middle Buyer for the purpose of negotiating the attendance by Artist for the specific event listed above. The Middle Buyer is not always the exclusive representative of Artist's within its network. The Middle Buyer will act as the Purchaser's Exclusive Talent Procurer for the purpose of negotiating the specific engagement with the Artist. *If Purchaser contacts or attempt to contact a different party to secure the same Artist at any time the full binder fee will be retained by Middle Buyer, without liability as liquidated damages.

4) If the Purchaser in any way fails to honor their initial Artist offer and this binder by not returning agreements in signed condition, breach any of the agreement clauses, becomes unavailable for extended period of times during negotiations, fails to forward remaining deposit(s) or otherwise by their own actions jeopardize the Middle Buyer's ability to secure the engagement. The Middle Buyer will notify Purchaser in writing of the cancellation of the offer. The full binder fee will be returned to Purchaser-minus a five percent (5%) fee that will be retained by Middle Buyer without liability as liquidated damages.

5) The Artist may choose to not accept the Purchaser's offer within 14 days of receiving offer and binder. If the binder has been issued by the Purchaser- any mutually agreed offer adjustments necessary to secure a confirmation will be reflected in the final booking contract. The full binder fee will be returned to Purchaser within three (3) business days of Artist's non-acceptance of offer. Should Artist choose to not accept the Purchaser's offer, Purchaser will be notified in writing within 14 days of receipt of offer, if Artist choses to pass on event.

6) The Purchaser's offer will be valid for a period of fourteen (14) business days following the Middle Buyer's receipt of the binder deposit fee. If the artist requested is unavailable for the date(s) or declines the offer, the binder fee will be returned by Middle Buyer to Purchaser within three (3) business days unless otherwise mutually agreed in writing. The Purchaser must provide accurate wire details via electronic transmission. Any bank transaction fee's outlined in the binder invoice is non-refundable. Should the Artist accept the suggested offer, the binder fee and deposit will not be returned if the Purchaser fails to adhere to the binder terms, fails to provide requirements or in any other way fails to comply with the terms of the agreement the initial deposit binder fee will be retained by Artist, without liability as liquidated damages.

7) This binder agreement does not constitute a booking contract or a confirmed offer, absolutely NO advertising (even by word of mouth) is to take place before the Artist confirms the offer in writing, a separate booking contract has been issued to Purchaser and returned to Middle Buyer in signed condition, all remaining deposits had been made to Middle Buyer by the Purchaser and the Artist approves marketing materials.

8) If Purchaser in any way breach's binder agreement terms, retracts their binding offer, becomes unavailable for extended period of times during negotiations or fails to forward remaining deposit(s) or otherwise disrupts Middle Buyer's ability to negotiate and confirm the offer, the Middle Buyer has the right to terminate this binder agreement, without liability, and retain a five percent fee (5%) of binder deposit as liquidated damages.

9) If the Purchaser in the future breach's any part of the booking contract or fails to provide Artist requirements outlined elsewhere in the rider including failure to provide flights, accommodation, technical equipment, security, per diems, meals etc. the binder fee will be retained by Artist as liquidated damages and the Purchaser will be subject to legal liability for breach of agreement.

10) If any part of this agreement shall be deemed to be invalid or unenforceable by a court of competent jurisdiction to make such determination. The remainder of the Agreement shall remain in full force and effect.

11) Nothing contained therein shall be construed as creating any agency, partnership or other form of joint enterprise between the parties.

12) This Agreement may be changed only by mutual agreement of authorized representatives of the parties in writing.

13) Purchaser agrees to indemnify **Middle Buyer** against claims relating to the event. And in the event that any legal action is brought against Middle Buyer as a result of the Purchaser, or Purchaser's officers, directors, shareholders, principals, employees or agents, or arising out of the Event(s) itself, Purchaser agrees to bear all costs associated in the defense of itself and Talent in such action(s).

14) Purchaser must notify middle buyer in writing any potential corporate partners or potential sponsorship partners prior to contacting any such potential partner. Booking Agent, Management & Artist will be notified via electronic transmission by middle buyer - prior to any such solicitation by Purchaser. Artist, Management and Booking Agency will have the absolutely termination authority of any such arrangement should there be a material conflict of interest with any such party. As a final inducement, Purchaser may only approach potential sponsorship or corporate partners after a "Hold" amount of not less than Ninety Thousand Dollars ($90,000.00 USD) has been formally submitted to Middle Buyer.

15) This agreement shall be governed according to the laws, of the state of California. The parties thereto consent to the exclusive jurisdiction of the courts of the state of California and/or of any federal court located in such state in connection with any action or proceeding arising out of or related to this agreement.

Notices regarding any dispute arising out of this Agreement shall be sent to:

**Middle Buyer:**
Mainstream Media Partners
263 W. Olive Ave # 239
Burbank, CA 91502
Attn: Bruce Johnson


**Purchaser:**
V Entertainment
Address _____
City_____ State_____
Zip _____

THE SIGNATURES BELOW CONFIRM THAT THE PARTIES HAVE READ AND
APPROVED EACH PROVISION SET FORTH ABOVE.

V Entertainment:                              Mainstream Media Partners:

_____          _____
Authorized Signatory                          Bruce Johnson

_____                                   4/24/17
Date                                                      Date

# EXHIBIT 2

# PROMISORY NOTE

FOR VALUE RECEIVED, on or before May 31, 2018, Bruce Johnson, individually and on behalf of Mainstream Media Partners Inc., (collectively referred to as the "Promisor") promises to pay to the order of V Entertainment and/or Lynn Bautista (the "Promisee") the principal sum of $186,100 Dollars, broken down as follows:

1.   $25,000 on or before April 12, 2018;

2.   $161,100 on or before May 31, 2018;

If each installment payment on this Note is not paid in full by its due date, the Promisor is in Default. There is no grace period. At the election of the holder of this Note, all payments due hereunder may be accelerated, and this Note shall become immediately due and payable without notice or demand, upon the occurrence of an Event of Default under this Note. In addition to the rights and remedies provided herein, the holder of this Note may exercise any other right or remedy in any other document, instrument or agreement evidencing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

In the event the Promisor sells or transfers any real property owned in whole or in part by Promisor, the escrow instructions shall expressly state and allow for the proceeds of the sale to be applied directly to the outstanding balance of this Note until full satisfaction of the Note is reached.   The Promisor shall promptly serve written Notice of any potential sale of any real property in writing, to the Promisee at the following address with two (2) days of entering escrow: Law Offices of Norman Grissom located at 5060 N. Harbor Drive, Suite 255, San Diego, California 92106 or via email at ndglaw2014@gmail.com.

The Promisor agrees to pay the all reasonable attorneys' fees and costs to of the Promisee if this note is placed in collection after maturity. All exemptions and homestead laws and all rights of the undersigned thereunder are hereby waived (where applicable under law). The holder hereof may grant to the maker, any endorsers and any other persons obligated hereon, extensions of time for the payment of this note and/or the maturity of any installment or installments, in whole or in part, without limit as to the number of such extensions, or the period or periods thereof. Presentment, notice of dishonor and protest are hereby waived.



The Promisor has the right to prepay this note, in whole or in part, at any time without penalty. Each payment or prepayment of any part of the principal amount of this Note shall be recorded by the Promisee, and shall be endorsed hereon prior to any transfer of such Note. The full principal is due on or before May 31, 2018, however, partial payments will be accepted and credited toward the full amounts due.

No provision herein or in any instrument, agreement, or document referred to herein shall require or permit the collection of interest in excess of the maximum lawful rate which a Promisor may stipulate and agree to pay as determined by a court of competent jurisdiction over the holder of the Note. If it is so determined that any excess interest is provided for, then this paragraph shall

govern and such excess shall be applied first to any other amounts not constituting interest due or which may become due from such Borrower under this Note or any instrument, agreement or document referred to herein, and the balance, if any, shall be held by, and the Borrower hereby pledges such balance to, the Promisee as security for the full and faithful performance by the Promisor of its obligations under this Note and the Security Documents; provided, however, that in no event shall such Promisor be obligated to pay, and the Promisee hereby waives payment of, the amount of interest to the extent it is in excess of the amount permitted by applicable law.

This Note shall be construed in accordance with and governed by the laws of the State of California.

Guarantor Clause

Bruce Johnson, individually ("Guarantor") hereby personally guarantees payment of this Note. Guarantor agrees that the Promisee may proceed against the Guarantor directly and independently of the Promisor, and that the cessation of the liability of the Promisor for

any reason other than full payment, or any extension, renewal, forbearance, change of rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension of the Promisee's remedies or rights against the maker, shall not in any way affect the liability of Guarantor.

Dated:   3/12/18

Bruce Johnson, Guarantor

Dated:   3/12/18

Bruce Johnson, Individually
Promisor

Dated: 3/12/18

Bruce Johnson on behalf of
Mainstream Media Partners Inc.
Promisor

Dated:

Lynn Bautista and/or
V Entertainment
Promisee

Note payable at the Law Offices of Norman Grissom located at 5060 N. Harbor Drive, Suite 255, San Diego, California 92106.

B1040 (FORM 1040) (12/15)                                    "BY FAX"

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>Lynn Bautista, an individual; | DEFENDANTS<br>Bruce Johnson, an individual; Mainstream Media Partners, Inc., a California corporation; |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Ali Hosseini, Esq. 5060 N. Harbor Drive, Suite 255, San Diego, CA 92106, (619) 544-8940 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>● Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>● Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint for non-dischargeability of debt for: 1) False Pretenses; False Representation; and Fraud under 11 U.S.C. Section 523(a)(2)(A)

---

## NATURE OF SUIT

**(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)**

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
● 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  220,000 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Bruce Dewayne Johnson | BANKRUPTCY CASE NO.<br>1:18-bk-12321-MT | |
| DISTRICT IN WHICH CASE IS PENDING    Central | DIVISION OFFICE | NAME OF JUDGE<br>Judge Maureen Tighe |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>12/26/2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.